**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT D. GRAFFIUS, | ) | CASE NO. 4:20-CV-01475-JG |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| WARDEN JAY FORSHEY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

### I.    Introduction

Robert D. Graffius ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is an Ohio prisoner who is currently serving an aggregate prison term of eight years for rape. (ECF No. 1, PageID #: 1). He now asserts four grounds for relief. (ECF No. 1, PageID #: 4–9). Warden Jay Forshey ("Respondent") filed an amended return of writ on October 30, 2020. (ECF No. 6). Petitioner filed a traverse on September 2, 2021. (ECF No. 8).

This matter was referred to the Court under Local Rule 72.2 to prepare a report and recommendation on Petitioner's petition and other case-dispositive motions. Because Petitioner has presented only procedurally defaulted and meritless claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

### II.    Relevant Factual Background

The Ohio Court of Appeals for the Seventh Appellate District set forth the following

facts[1] on direct appeal:

{¶2} Appellant and the victim were both with their respective friends at a local restaurant when they met. The victim was interested in dating Appellant's friend so she exchanged phone numbers with Appellant to talk with him about the friend. Although the victim admits that she and Appellant texted each other, she clarified that the conversation was not romantic and was for the purpose of learning about his friend.

{¶3} On June 6, 2017, Appellant texted the victim around 6:00 a.m. She did not respond until around 11:00 a.m. The victim's sister was also her roommate. They had argued that morning and the victim left the house. The victim walked to the library and, at some point, Appellant texted her and asked if she wanted to join him and his brother at his apartment to drink beer. He offered to pick her up at the library. She accepted his invitation.

{¶4} Appellant and his brother drove to the library and the victim entered his vehicle. Before driving to Appellant's apartment, they stopped at a gas station to purchase beer. The victim and Appellant's brother accompanied him to his apartment and began to drink the beer. Appellant's brother left after drinking one beer. Appellant and the victim remained at the apartment. The facts up to this point are not disputed, but at this point the parties' stories diverge.

{¶5} According to the victim, she felt tired from not sleeping the night before and was emotional after the fight with her sister. She asked Appellant if she could take a nap in his bedroom. At first, Appellant remained in the living room. However, a short time later, Appellant entered the bedroom and got in bed next to the victim. She asked him what he was doing and he responded that he just wanted to listen to music and would leave her alone. After a few minutes, he began to touch her over her clothes. The victim told him to stop and he did. However, a few minutes later he began to touch her again. The victim got up, went to the living room and sat down on a reclining chair.

{¶6} The victim noticed that Appellant had begun playing a pornographic movie while she was in the bedroom which was still playing as she sat in the chair. Appellant entered the living room and asked if she wanted to watch it with him. She said no.

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

When the victim looked up, he was standing in front of her and had taken off his pants. He pulled her pants off and got on top of her. She began to scream and pound the wall behind her with her fists while yelling for help. At some point, she convinced him to let her go to the bathroom. She had hoped that she would be able to run out of the bathroom and out the door without him catching her. However, when she opened the door he grabbed her and threw her onto his bed. He penetrated her and she begged him to stop. Appellant repeatedly asked her why she was yelling at him and said "[y]ou know you want this." (Tr., p. 272.)

{¶7} After he completed the rape, Appellant helped the victim off the bed and hugged her. She did not respond to the hug until he told her to hug him back. He kept asking her if she was mad at him and said "[y]ou're not gonna tell on me, are you?" (Tr., p. 274.) The victim put her clothes back on and asked Appellant where he threw her phone. After finding the phone under a table, the victim walked to the door. As she left, Appellant told her to "[s]tay in touch." (Tr., p. 275.)

{¶8} Once outside, the victim called a friend who told her to call 911. The victim waited for police at her house which was two or three blocks from Appellant's apartment. As she waited, Appellant repeatedly called and texted her phone. The calls continued even after Officer Richard Whitfield arrived. Officer Whitfield told the victim to text Appellant "[a]re you sorry [for] what you did to me?" (Tr., p. 284.) Appellant responded that he did not know what she was talking about. Officer Whitfield testified that the victim appeared to be in shock and "shaken." (Tr., p. 171.)

{¶9} Officer Whitfield located Appellant and brought him to the station on a bench warrant. Appellant repeatedly denied having intercourse with the victim and began to get defensive during the interrogation. Appellant stated that he "[d]idn't have sex with her. Absolutely not. Didn't have sex with that lady." (Tr., p. 180.) He declined Officer Whitfield's request for a DNA sample.

{¶10} The victim was taken to the hospital for an examination. The Sexual Assault Nurse Examiner, Clarrissia Miller, performed the examination. Miller testified that she observed an abrasion to the victim's periurethral area, the presence of light blood, and significant swelling. She also noted that the victim was unable to tolerate a speculum due to the amount of swelling. She testified that these injuries are indicative of force and are not consistent with consensual acts. During the examination, a single sperm cell and semen were found.

{¶11} During the investigation, officers obtained a warrant for Appellant's DNA and to search his apartment. Appellant's DNA

sample matched the sample obtained during the victim's examination. After investigators informed Appellant of the match, he conceded that he and the victim engaged in intercourse but claimed that it was consensual.

{¶12} On August 16, 2017, Appellant was charged through a secret indictment on one count of rape, a felony of the first degree in violation of R.C. 2907.02(A)(2). A two-day jury trial commenced on March 20, 2018. At trial, Appellant testified that the victim texted him while she was at the library and asked if she could come to his house and drink beer. At first, he told her that he was busy but agreed when she persisted. He testified that he told the victim that he was going to lay down in his bedroom and that she could join him if she wanted. After about fifteen minutes had passed, she remained in the living room so he called out and asked her if she wanted to join him. He claimed that she entered the room and they fell asleep. Once they woke up, they engaged in consensual sex. Afterward, she was mean and disrespectful to him so he told her to leave. He claimed that she kept calling him and asking if she could return to the house and continue to drink beer.

{¶13} On March 21, 2018, the jury found Appellant guilty of the sole charged offense. On March 26, 2018, the trial court sentenced Appellant to eight years of incarceration with credit for 209 days served. Appellant was also designated as a tier three sex offender. This timely appeal followed.

*State v. Graffius*, No. 18 CO 0008, 2019-Ohio-2714, ¶¶ 2–13 (7th Dist. Ohio June 24, 2019).

## III.  Relevant State Procedural History

### a.  Indictment, Trial, Verdict, and Sentencing

Petitioner was indicted on August 16, 2017 for one count of first-degree rape, in violation of Ohio Revised Code Section 2907.02(A)(2). (ECF No. 6-1, PageID #: 71). At arraignment, Petitioner pleaded not guilty. (ECF No. 6-1, PageID #: 73).

The case proceeded to trial on March 19, 2018, and the jurors ultimately found Petitioner guilty. (ECF No. 6-1, PageID #: 78, 81). The trial court sentenced Petitioner to eight years imprisonment on March 26, 2018. (ECF No. 6-1, PageID #: 84).

### b.  Direct Appeal

Petitioner filed a notice of appeal with the Seventh District of the Ohio Court of Appeals on March 27, 2018 and an appellate brief on July 30, 2018. (ECF No. 6-1, Exs. 7 (notice), 8 (brief)). In his appeal, he raised two assignments of error (sic):

> 1. Prosecutorial misconduct denied Mr. Graffius a fair trial and due process of law. Fifth and Fourteenth Amendments, United States Constitution, Article I, Sections 10 and 16, Ohio Constitution.
>
> 2. Mr. Graffius's trial counsel rendered ineffective assistance of counsel, in violation of his constitutional rights. Sixth and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution.

(ECF No. 6-1, PageID #: 104, 106). The State filed an opposition brief on November 8, 2018, and Petitioner filed a reply on November 26, 2018. (ECF No. 6-1, Exs. 9, 10). On June 24, 2019, the appellate court rejected Petitioner's assignments of error. (ECF No. 6-1, Ex. 11).

### c.  First Appeal to the Supreme Court of Ohio

Petitioner filed a notice of appeal and memorandum in support of jurisdiction with the Supreme Court of Ohio on August 5, 2019. (ECF No. 6-1, Exs. 12, 13). In his memorandum, Petitioner raised the following propositions of law:

> 1. When the prosecution vouches for the credibility of the accusing witness, and calls the defendant a liar when his testimony contradicts that of his accuser, the defendant is deprived of a fair trial and reversible error occurs. Fifth & Fourteenth Amendments, United States Constitution.
>
> 2. Defendant counsel renders ineffective assistance when no objection is made to prosecutorial misconduct. Sixth & Fourteenth Amendments, United States Constitution.

(ECF No. 6-1, PageID #: 163, 165). The State did not file a response brief. The Supreme Court of Ohio declined to accept jurisdiction on October 15, 2019. (ECF No. 6-1, PageID #: 170).

### d.  Application for Reopening

Petitioner then filed an application to reopen his direct appeal on August 22, 2019. (ECF No. 6-1, Ex. 15). He raised the following assignments of error (sic):

> 1. The[] Appellant Robert D. Graffius was denied his inalienable right to a fair trial when the State of Ohio used tainted evidence, gained without waiver of Miranda rights, to secure conviction.
>
> 2. The[] Appellant Robert D. Graffius was denied fair opportunity to present a complete defense when trial counsel failed to properly preserve exculpatory evidence for admission.

(ECF No. 6-1, PageID #: 174, 176). Petitioner also filed a motion for judgment on the pleadings on October 3, 2019. (ECF No. 6-1, Ex. 16). The appellate court reviewed Petitioner's application for reopening on the merits and rejected it.[2] *State v. Graffius*, No. 18 CO 0008, 2019-Ohio-4961, at ¶¶ 11, 14 (7th Dist. Ohio Nov. 21, 2019).

### e.  Second Appeal to the Supreme Court of Ohio

Petitioner then filed a notice of appeal with the Supreme Court of Ohio on January 3, 2020, appealing the appellate court's opinion rejecting his application to reopen. (ECF No. 6-1, Ex. 18). He filed a memorandum in support of jurisdiction the same day. (ECF No. 6-1, Ex. 19). In the memorandum, Petitioner alleged the following three propositions of law:

> 1. A criminal defendant received ineffective assistance of appellate counsel where counsel fails to raise "dead-bang" winning arguments affecting substantive rights.
>
> 2. A criminal defendant is denied a fair trial when the prosecution uses tainted evidence, which is gained without waiver of *Miranda* rights, to secure conviction.
>
> 3. A criminal defendant is denied a fair trial when defense counsel fails to properly preserve exculpatory/impeachment evidence for admission.

(ECF No. 6-1, PageID #: 204–05). The Supreme Court of Ohio declined to accept jurisdiction on March 17, 2020. (ECF No. 6-1, Ex. 20).

### f.  Federal Habeas Corpus Petition

---

[2] The court also noted that Petitioner's motion for judgment on the pleadings was "not applicable." (ECF No. 6-1, PageID #: 193–94).

Petitioner petitioned pro se that this Court issue a writ of habeas corpus on June 29, 2020. (ECF No. 1). He asserted the following grounds for relief (sic):

> **Ground One:** Prosecutorial misconduct denied a fair trial and due process of law.
>
> [No supporting facts alleged.]
>
> **Ground Two:** Ineffective assistance of appellate counsel.
>
> **Supporting Facts**: Appellate counsel failed to raise dead-bang winning arguments on direct appeal. Record fully sustained arguments and lack thereof denied meaningful review.
>
> **Ground Three:** Denied a trial pursuant use of tainted evidence.
>
> **Supporting Facts**: Due to fact that an interview was conducted by a regular patrolman, *Miranda* rights weren't clearly given. The officer never stated he was questioning about rape allegations and told me if I admitted to a crime than he would charge me. See Transcript of Interview, attached.
>
> **Ground Four**: Denied fair opportunity to present a complete defense due to counsel's failure to properly admit exculpatory evidence.
>
> **Supporting Facts**: Trial counsel's inability to get exculpatory evidence admitted infringed upon my compulsory right and denied the jury all relevant information to deliberate on. The photo could have been authenticated on cross-examination of alleged victim. Ohio damaged the structure and idealism of a fair trial.

(ECF No. 1, PageID #: 4–9).

## IV.  Legal Standards

### a.  Timeliness of Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); *Sexton v. Wainwright*, 968 F.3d 607, 609–10 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1064 (2021). There is no dispute

that Petitioner timely filed his federal habeas corpus petition within the 28 U.S.C. § 2244(d) one-year statute of limitations.

### b. Jurisdiction

Title 28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." § 2241(d). The Court of Common Pleas of Columbiana County sentenced Petitioner, and Columbiana County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

### c. Cognizable Federal Claim

Under § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review a state court's decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### d. Exhaustion

8

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at \*12 (N.D. Ohio Feb. 12, 2007) (citing § 2254(b) and (c)). "A petitioner satisfies the exhaustion requirement once the state supreme court provides him with an opportunity to review his claims on the merits and the state supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v. Mitchell*, 336 F. Supp. 2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994))). "If a remedy remains under state law that a federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot review the merits of the claim." *Id.* (citing *Rust*, 17 F.3d at 160). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at \*2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848).

### e. Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84–87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal

habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id*. at 732–33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . . it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert its legal *and* factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a

federal constitutional issue—not merely as an issue arising under state law.'" *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

### f.  AEDPA Standard of Review

§ 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539

12

U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

V. **Discussion**

a. **Ground One – Procedurally Defaulted**

In Ground One, Petitioner argues that prosecutorial misconduct denied him a fair trial and due process of law. (ECF No. 1, PageID #: 4). He does not provide any supporting facts for this ground, but previous appeals indicate he is likely referencing the prosecutor's statements in closing argument that Petitioner lied and the victim told the truth. (*See* ECF No. 6-1, PageID #: 104–05). Petitioner brought this claim on direct appeal to the Ohio Court of Appeals and Ohio Supreme Court. (ECF No. 6-1, PageID #: 96, 159).

Respondent argues that this ground is procedurally defaulted because the Ohio Court of Appeals only reviewed the claim for plain error, an independent and adequate basis for procedural default. (ECF No. 6, PageID #: 55). In the alternative, Respondent argues the ground is meritless because Petitioner cannot prove that the prosecutor's statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." (ECF No. 6, PageID #: 55 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

In his traverse, Petitioner argues that the Ohio Court of Appeals did not invoke the contemporaneous objection rule but instead addressed the merits of his claim through a plain error analysis. (ECF No. 8, PageID #: 704).

Federal courts must complete a four-part analysis to determine if a claim was procedurally defaulted based on an adequate and independent state law ground. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (citing *Maupin*). The court must decide whether: (1) the petitioner failed to comply with a state procedural rule, (2) the state courts enforced the procedural rule, and (3) the procedural rule is an "adequate and independent" state ground that forecloses review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, even if the procedural rule was an adequate and independent ground, a petitioner can bypass procedural default by demonstrating cause for the procedural violation and actual prejudice. *Id.*

This case meets the first three prongs of the *Maupin* test. Rule 103 of the Ohio Rules of Evidence requires parties to make timely objections and offer explanations, if necessary. Ohio Evid. R. 103. Here, Petitioner did not object to the prosecutor's statements at trial and first raised this issue on direct appeal to the Ohio Court of Appeals. *Graffius*, 2019-Ohio-2714, ¶¶ 14, 17. As a result, the Ohio Court of Appeals reviewed the alleged misconduct for plain error. *Id.* Petitioner's failure to make a timely objection at trial was an adequate and independent ground to foreclose habeas review. *Wogenstahl v. Mitchell*, 668 F.3d 307, 336

14

(6th Cir. 2012) ("[F]ailure to adhere to the 'firmly-established Ohio contemporaneous objection rule' is 'an independent and adequate state ground' of decision.") (citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006) (holding that the petitioner's claim was procedurally defaulted as petitioner's violation of Ohio's contemporaneous rule objection constituted an "adequate and independent" ground)); *see also Hand v. Houk*, 871 F.3d 390, 417 (6th Cir. 2017) (same).

Contrary to Petitioner's claim in his traverse, plain error review does not address the merits of a claim. *See Grayer v. McKee*, 149 F. App'x 435, 441–42 (6th Cir. 2005) (differentiating review on the merits and plain error analysis); *Jells v. Mitchell*, 538 F.3d 478, 511 (6th Cir. 2008) ("The court's plain-error review is not considered a review on the merits, and therefore Jells has procedurally defaulted on this claim if no exception is applicable."). Thus, the appellate court's plain error review was not a review on the merits, and Petitioner's claim is procedurally defaulted. *See Keith v. Mitchell*, 455 F.3d 662, 673–74 (6th Cir. 2006) ("[T]he Ohio Supreme Court's plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue for Keith.").

Finally, as Petitioner has alleged no cause or prejudice in his habeas petition, the fourth *Maupin* prong does not apply. 785 F.2d at 138. Accordingly, this ground is procedurally defaulted.

### b. Ground Two – Procedurally Defaulted

Petitioner argues he had ineffective assistance of appellate counsel in Ground Two. (ECF No. 1, PageID #: 6). In his supporting facts, Petitioner argues his counsel "failed to raise dead-bang winning arguments on direct appeal." (ECF No.1, PageID #: 6). He also claims the "[r]ecord fully sustained arguments, and lack thereof denied meaningful review." (ECF No. 1, PageID #: 6). Petitioner first brought this claim in his second appeal to the Supreme Court of Ohio. (*See* ECF No. 6-1, PageID #: 203). Respondent's states that this ground "must refer to

Graffius' Application to reopen and its fate in the Ohio courts" and claims this Court can review it on the merits since the Ohio Court of Appeals and Ohio Supreme Court issued decisions on Petitioner's ineffective assistance of appellate counsel claims. (ECF No. 6, PageID #: 41).

The Court disagrees. Petitioner's ground raises a general issue as to appellate counsel failing to raise "dead-bang winning arguments" on his direct appeal. (ECF No. 1, PageID #: 6). However, he fails to specify these winning arguments or how he was prejudiced by his appellate counsel's failure to raise them.

Moreover, Petitioner did not raise this general ground—"ineffective assistance of appellate counsel"—in his application to reopen his direct appeal. (*See generally* ECF No. 6-1, Ex. 15). While he raised Grounds Three and Four in his application, which are discussed below, Petitioner failed to raise this specific claim at every opportunity in state court to avoid procedural default. *See Coleman*, 501 U.S. at 731 ("[A] state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."). Moreover, to preserve an issue for AEDPA review, petitioners are required to state the *same* claim under the same theory at every opportunity. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("This circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."); *see also Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987) ("The doctrine of exhaustion requires that the same claim under the same theory be presented to state courts before raising it in a habeas petition."). While Petitioner indeed filed an application to reopen, which is for ineffective assistance of appellate claims, he did not specifically raise "ineffective assistance of appellate counsel" or his counsel's failure to raise "dead-bang winning arguments" as an assignment of error. *See* Ohio R. App. P. 26(B). Thus, he failed to exhaust this specific claim in the state courts, and accordingly, the ground is procedurally defaulted.

Petitioner also fails to demonstrate cause or actual prejudice for failing to bring this specific claim in his application to reopen or a miscarriage of justice that will arise if the Court fails to review the claim. Indeed, Grounds Three and Four—which the Court reviews under AEDPA below—are ineffective assistance of appellate counsel claims, so Petitioner is not left without appellate counsel claims if Ground Two is procedurally defaulted. Accordingly, the Court cannot review this ground as it is procedurally defaulted.

### c.  Grounds Three and Four – Reviewed on the Merits

Petitioner argues he was denied a fair trial in Ground Three. (ECF No. 1, PageID #: 7). Specifically, he claims a police officer did not properly advise him of his Miranda rights or notify him that he would be charged if he admitted to an offense. (ECF No. 1, PageID #: 7). Petitioner also attached a portion of the transcript of his interview with the police officer to his petition. (ECF No. 1, PageID #: 12–17).

In Ground Four, Petitioner argues he was denied a fair opportunity to present a complete defense due to his counsel's failure to properly admit exculpatory evidence. (ECF No. 1, PageID #: 9). He specifically references his trial counsel's inability to admit an "exculpatory" photo into evidence at trial. (ECF No. 1, PageID #: 9).

The first time Petitioner raised the issues in Grounds Three and Four was in his application to reopen his direct appeal. (*See* ECF No. 6-1, PageID #: 174). The appellate court reviewed these claims as ineffective assistance of appellate counsel claims in its opinion. See *Graffius*, 2019-Ohio-4961, at ¶ 15. Petitioner again raised the claims in his appeal of the Ohio Court of Appeals decision rejecting his application to reopen. (ECF No. 6-1, PageID #: 205).

Respondent argues these grounds have been procedurally defaulted since they were not raised on direct appeal. (ECF No. 6, PageID #: 42–44). Respondent further argues that there is no prejudice or miscarriage of justice because the claims are "fundamentally meritless." (ECF No. 6, PageID #: 44).

17

The Ohio Court of Appeals reviewed each claim in its review of the Petitioner's application to reopen his direct appeal. First, it stated the applicable legal standard for the petition:

> {¶5} In order to show ineffective assistance of appellate counsel, the applicant must meet the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Pursuant to *Strickland*, the applicant must first demonstrate deficient performance of counsel and then must demonstrate resulting prejudice. *Id.* at 687. *See also* App.R. 26(B)(9).

*Graffius*, 2019-Ohio-4961, at ¶ 5. The Court then reviewed and rejected the first assignment of error regarding Petitioner's *Miranda* rights:

> {¶6} Appellant concedes that Officer Whitfield testified that he read Appellant his Miranda rights before conducting the interview at issue. However, Appellant argues that the record does not reflect that he executed a valid waiver of these rights. As such, he argues that statements he made during this police interview were improperly used against him at trial.
>
> {¶7} "When a suspect is questioned in a custodial setting, the Fifth Amendment requires that he receive *Miranda* warnings to protect against compelled self-incrimination." *State v. Spring*, 7th Dist. Jefferson No. 15 JE 0019, 2017-Ohio-768, 85 N.E.3d 1080, ¶ 22, appeal not allowed, 150 Ohio St.3d 1410, 2017-Ohio-6964, 78 N.E.3d 910, ¶ 22 (2017), citing *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 34 (2013); *Miranda, supra*.
>
> {¶8} However, a suspect may knowingly and intelligently waive his *Miranda* rights and make a statement to law enforcement. A *Miranda* waiver does not need to be in writing in order to be valid. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 68, citing *North Carolina v. Butler*, 441 U.S. 369, 373, 375-376, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Myers* at ¶ 68, quoting *Berghuis v. Thompkins*, 560 U.S. 370, 384, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010). Such uncoerced statements are sufficient to establish a waiver. *Myers* at ¶ 71.
>
> {¶9} Officer Whitfield testified that he advised Appellant of each *Miranda* warning, reading to Appellant from a warning

card before he began the interview with Appellant. (Trial Tr. Vol. I, p. 179.) According to Officer Whitfield, Appellant answered questions regarding the subject incident and did not appear upset until asked about the rape allegations, which he denied. Officer Whitfield noted that Appellant declined to provide a DNA sample, which was later obtained through a search warrant.

{¶10} In fact, Appellant concedes that he answered questions from Officer Whitfield after he was advised of his *Miranda* rights. He claims that his refusal to voluntarily provide a DNA sample provides evidence that he did attempt to exercise his right to remain silent per *Miranda*. The record does not support Appellant's assertion. Appellant does not deny that he voluntarily answered Officer Whitfield's questions nor does he claim that he requested counsel at any time during his interview. Thus, the uncoerced statements made by Appellant after he was given his *Miranda* warnings established an implied waiver of his rights. Counsel's failure to raise the issue on appeal cannot result in a determination that his counsel provided deficient performance.

{¶11} Additionally, Appellant cannot demonstrate prejudice. Even if his statement to Officer Whitfield had been excluded, the record contains ample evidence supporting Appellant's conviction. The jury heard the testimony of Clarrissia Miller, the Sexual Assault Nurse Examiner who performed the victim's examination. *Graffius* at ¶ 10. Miller testified that she observed an abrasion to the victim's periurethral area, the presence of light blood, and significant swelling. She also noted that the victim was unable to tolerate a speculum due to the amount of swelling. She testified that these injuries are indicative of force and are not consistent with consensual acts. During the examination, a single sperm cell and semen were found. The DNA testing of the cell matched Appellant's DNA sample. Appellant's DNA sample was obtained through a search warrant and Appellant does not dispute the validity of the warrant. Further, the jury heard testimony that Appellant repeatedly called and texted the victim's phone after the incident. In fact, one such attempt at communication occurred in Officer's Whitfield's presence. *Id.* at ¶ 8. Finally, the jury heard from both the victim and Appellant. The jury was free to believe either version of the facts and, based on Appellant's conviction, apparently believed the victim. Hence, Appellant is unable to demonstrate prejudice. Accordingly, Appellant's first assignment of error is without merit.

*Id.* at ¶¶ 6–11. The state court then reviewed and rejected Petitioner's second claim, related to his trial counsel:

{¶12} Appellant argues that his counsel was ineffective for failing to raise as error the trial court's decision to grant the state's motion in limine prohibiting the defense from introducing a photograph at trial. According to Appellant, the photograph is a "selfie" which shows him relaxing in bed with the victim. He argues that this photograph is evidence the victim consented to the sexual activity.

{¶13} According to the trial transcripts, the trial court allowed defense counsel to show the photograph to Sergeant Wade Boley during his testimony but did not immediately rule on defense counsel's request to admit the photograph into evidence. (Trial Tr. Vol. I, pp. 227-230.) Sgt. Boley did not testify as to what was depicted in the photograph.  His testimony was limited to stating that the photograph showed a picture of Appellant's bedroom. The court explained that it would not rule on counsel's request to admit the photograph into evidence until it could be authenticated. On March 20, 2018, the state filed a motion in limine requesting that the photograph be excluded because the defense failed to provide the photograph during discovery and because the photograph does not include any date or time reference as to when it was taken. It does not appear that the court ruled on the state's motion in a judgment entry nor does it appear that the court ruled on the motion at trial.

{¶14} Regardless, this photograph, even if it shows what Appellant claims, would not serve to help him. The victim admitted in her testimony that she went to lay down in Appellant's bed and, shortly thereafter, he joined her in the bed. (Trial Tr. Vol. II, pp. 294-295.) She testified that she asked him what he was doing and he replied that he just wanted to listen to music. She explained that the two of them were in bed for a few minutes before Appellant made a sexual advance. The photograph, at best, could only serve to prove that the victim and Appellant were lying in bed together at some point. Because the victim admitted that she and Appellant were in bed together for at least a period of time prior to Appellant's sexual advances, the photograph is irrelevant. The photograph does not, in and of itself, prove that the sexual activity was consensual. Failure to admit the photograph into evidence was not error and appellate counsel is not ineffective for failing to raise the issue on appeal. Accordingly, Appellant's second assignment of error is without merit.

*Id.* at ¶¶ 12–14. Ultimately, the state court concluded that Petitioner "failed to show a genuine issue as to whether he was deprived of effective assistance of counsel on appeal" and denied the application. *Id.* at ¶ 15.

20

For Petitioner to prevail on these claims under AEDPA, he must demonstrate that the state appellate court's application of the law or interpretation of the facts was unreasonable. *See* § 2254. However, he does not argue how the above-quoted state appellate court's determination was contrary to or an unreasonable application of law. The state court correctly identified *Strickland* as the standard for each claim and found that Petitioner "failed to show a genuine issue as to whether he was deprived of effective assistance of counsel on appeal." *Graffius*, 2019-Ohio-4961, at ¶ 15.

Moreover, the state court correctly applied *Strickland* to each claim. The appellate court found that Petitioner's voluntary statements to police demonstrated that he offered an implied waiver of his Miranda rights. *Id.* at ¶ 10. Accordingly, the court determined that Petitioner's appellate lawyer did not act deficiently in failing to raise this issue on direct appeal. *Id.* The appellate court also found that Petitioner was not prejudiced by his counsel's failure to raise this issue since the record contained "ample" evidence of Petitioner's guilt. *Id.* at ¶ 11. Likewise, the appellate court applied *Strickland* to Petitioner's second assignment of error and found it meritless. *Id.* at ¶ 14. The court noted that the photograph Petitioner argued should have been admitted was "irrelevant" and that his appellate counsel did not err in neglecting to raise trial counsel's failure to admit the photograph as deficient. *Id.* This Court does not find that the state court improperly applied *Strickland* or unreasonably interpreted the facts of the case. Further, Petitioner has failed to demonstrate that the Ohio Court of Appeals made an unreasonable interpretation of facts or application of *Strickland*.

Accordingly, Petitioner has failed to overcome AEDPA's highly deferential standard. He has not shown that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington*, 562 U.S. at 101–04). Grounds Three and Four should therefore be dismissed as meritless.

## VI.    Certificate of Appealability

### a.    Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### b.    Analysis

Petitioner's grounds for relief are procedurally defaulted or meritless. If the Court accepts the foregoing recommendation, then Petitioner has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## VII.    Recommendation

Petitioner has presented only procedurally defaulted or meritless claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

Dated: May 25, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).